RUDOLPH J. KONICEK, APPELLEE, V. BOARD OF EQUALIZATION OF COLFAX COUNTY, NEBRASKA, APPELLANT.

324 N.W.2d 815

Filed October 8, 1982. No. 44269.

L. J. Karel, for appellant.

Donn K. Bieber, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

The plaintiff owns the southeast quarter of Section

3-19-3 in Colfax County, Nebraska. In 1978 the plaintiff's property was valued for tax purposes at $98,540 actual value. In 1979 the plaintiff filed a protest before the county board of equalization requesting that the assessed value of his property be reduced because the improvements on his land had not been valued proportionately with other property in the county. The county board increased the value of the plaintiff's property to $104,600. The value was subsequently increased by action of the State Board of Equalization and Assessment to $115,500. The plaintiff appealed from the action of the county board of equalization to the District Court.

The District Court found that improved real estate had been assessed disproportionately with unimproved real estate throughout the county and that the property of the plaintiff should be valued at $80,074 for tax purposes before the increase made by the State Board of Equalization and Assessment. The county has appealed.

The Constitution requires that "Taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises . . . ." Neb. Const. art. VIII, § 1.

The record shows that for the purposes of taxation land and improvements were valued separately in Colfax County. Farmland was valued in accordance with the Nebraska Agricultural Land Valuation Manual promulgated by the office of the state Tax Commissioner. Improvements to land were valued in accordance with a separate manual promulgated by the office of the Tax Commissioner. The result was that farmland without improvements was valued at approximately 20 percent of actual value while improvements on farmland were valued at approximately actual value. When these values were combined to arrive at the valuation of improved farm real estate, improved farm real estate was assessed at a higher percentage of actual value

than unimproved farm real estate.

The effect of the system of assessment used to value farm real estate was to create separate classifications of unimproved farmland and improved farmland with no correlation between the classifications. This method of assessment is not permissible under the constitutional requirement that all tangible property be valued uniformly and proportionately. Real property taxes may not be equalized by classifying property and then applying the same values to the same classifications of property. *County of Gage v. State Board of Equalization & Assessment,* 185 Neb. 749, 178 N.W.2d 759 (1970). The discrepancy was not the result of an error of judgment but was a deliberate and intentional discrimination systematically applied throughout the county.

Although the evidence shows that the land of the plaintiff was not assessed in excess of its actual value, that does not prevent the plaintiff from obtaining relief. A landowner is entitled to have his property assessed uniformly and proportionately with other property, even though the result may be that it is assessed at less than actual value.

The principle involved was stated in *Sioux City Bridge v. Dakota County,* 260 U.S. 441, 446, 43 S. Ct. 190, 67 L. Ed. 340 (1923), as follows: "This Court holds that the right of the taxpayer whose property alone is taxed at 100 per cent. of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of statute. The conclusion is based on the principle that where it is impossible to secure both the standards of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law."

The judgment of the District Court is affirmed.

AFFIRMED.

CLINTON, J., dissenting.

I dissent from the majority opinion because the taxpayer has not carried his burden of proving: (1) That the value of his property has not been fairly and proportionately equalized with all other property, resulting in a discriminatory, unjust, and unfair assessment. *Lexington Building Co., Inc. v. Board of Equalization,* 186 Neb. 821, 187 N.W.2d 94 (1971). (2) That the methods used in the evaluation of real property for tax purposes result in discrimination when compared with other real and tangible property in general throughout the county. *Lincoln Tel. & Tel. Co. v. County Board of Equalization,* 209 Neb. 465, 308 N.W.2d 515 (1981).

In order to arrive at the conclusion that it reaches, the majority, as did the trial court, makes some factual assumptions that are not shown in the record. As the majority opinion shows, its conclusions are based solely upon the statement of the county assessor that improvements on real estate are valued at about market value and rural lands are valued below market value. The assessor also testified that land values are set proportionately to their actual value throughout the county and improvements both on farmland and city are valued proportionately and by the same methods. He also testified that improvements add to the value of farmland and that Mr. Konicek's land is valued in the same manner as any other farmland in the county and his improvements are valued according to the same formula as other like improvements in the county. The majority assumes that these facts without more establish disproportionate valuation generally.

I would reverse and remand with directions to reinstate the valuations set by the board of equalization.

The assessment year here involved is 1979, and the pertinent assessment date is January 1 of that year. Neb. Rev. Stat. § 77-1301 (Reissue 1981). Konicek in-

troduced evidence of the valuations of three properties, his own 160 acres, an adjacent 240 acres in the same section, and an 80-acre tract also in the same section. For that year the county assessor determined the actual value of the Konicek 160 acres to be $98,540, assigning a value of $59,610 to the land and $38,930 to the improvements. Konicek filed a protest with the county board of equalization and at that time the board increased the land valuation to $65,670. Later, apparently as a result of a county-wide increase ordered by the State Board of Equalization, the value of the improvements was increased. That increase is not before us.

Konicek's summary of valuations shows that the assessor fixed the actual land valuation of the adjacent 240-acre tract (hereafter sometimes referred to as the Karel tract) at $72,910 and the improvements thereon at $22,475 for a total value of $95,385 for the real estate. The actual value of the 80-acre tract (hereafter the Faltys tract), having no improvements, was set at $27,075. One hundred ten and 24/100ths acres of the Konicek land are irrigated. Neither of the other two tracts are irrigated. However, this summary does not quite accurately reflect the underlying data. The assessment records indicate that improved tracts and unimproved tracts on the same farm are sometimes separately assessed. Konicek's own evidence indicates this was true as to both the Konicek and Karel farms. The significance of this fact we will develop later.

Konicek's own testimony and that of his expert witnesses indicated that the fair market value of his own tract (including improvements) in 1979 was between $288,000 and $320,000 while the fair market values of the adjoining 240 acres and the 80-acre tract were $432,000 and $140,000, respectively.

Konicek does not complain because his real estate is assessed at more than 35 percent of its actual market value, because it obviously is not. As ap-

pears from the evidence, it is grossly undervalued. In the District Court, as evidenced by his testimony, his complaint was that his buildings should be valued the same as his land. This despite the fact that everyone else's improvements are valued in the same manner as his. In this court, however, he complains because he claims his farm is valued disproportionately higher than other property, and therefore the constitutional provision that taxes be levied by valuation uniformly and proportionately upon all tangible property except as otherwise provided by the Constitution has been violated. Neb. Const. art. VIII, §§ 1, 2. As an illustration he points out that because the actual value of his improvements is higher than the actual value of the improvements on the adjacent 240 acres, his total actual valuation of the real estate as determined by the assessor (and accordingly the assessed value of 35 percent) is greater than the assessed value of the 240 acres. Likewise, he contends the unimproved 80 acres is undervalued in comparison with his own real estate.

No claim is made that the Konicek land and the Karel land (the 160-acre tract) are not proportionately valued. The evidence does not support any other conclusion. No claim is made that the improvements are not proportionately valued. The evidence does support the conclusion that Konicek has established that as between his 160-acre tract and the Karel and Faltys 80-acre tracts, his real estate has been overvalued because it was valued by the combination of methods we have mentioned. However, the taxpayer must meet a more substantial burden. He must establish that the methods used result in discrimination when compared with other real and tangible property *in general throughout the county. Lincoln Tel. & Tel. Co. v. County Board of Equalization,* 209 Neb. 465, 308 N.W.2d 515 (1981).

The logic by which the trial court reached its conclusion is without flaw. The question though is whether the premises or assumptions on which the reasoning is based appear in the record. The trial court's conclusion is obviously based upon the testimony of the assessor that in arriving at the total value of any piece of real estate, land is valued below actual value and the improvements at actual value. However, it is clear that in arriving at his conclusion the judge had to assume that the factual situation as shown by the evidence is typical of the situation in the county generally. There is no evidence in the record to show that such was the case.

Disproportionate valuation would result from the system used only where (1) a significant portion of the farms in the county are unimproved so that improved property bears a significantly higher portion of the tax burden than is its constitutional share, or (2) where the improvements on land are significantly disproportionately higher than the value of the land itself. That these situations are the case in general is not supported by the record. It is supplied by assumptions made. As earlier mentioned the record shows that improved farms are sometimes, if not always, appraised in separate tracts, with the unimproved portion being appraised separately from the improved portions of the tracts. Thus, disproportionate valuation cannot be established merely by the statement that improvements are valued by a standard different from the land itself.

We have consistently said: "A claim of disproportionate assessment is not sustained when supported only by opinion evidence that the property is assessed at a higher proportion to its actual value than *some* other property." (Emphasis supplied.) *Newman v. County of Dawson,* 167 Neb. 666, 672, 94 N.W.2d 47, 50 (1959); *Hastings Building Co. v. Board of Equalization,* 190 Neb. 63, 71, 206 N.W.2d 338,

343-44 (1973). We have said very recently: "In the evaluation of real property for tax purposes, where buildings and improvements are taxable as part of the real estate, the critical issue is the actual value of the entire property, not the proportion of that value which is allocated to the land or the buildings and improvements by the appraiser." *Bumgarner v. County of Valley,* 208 Neb. 361, 366-67, 303 N.W.2d 307, 310 (1981).

Having set forth the controlling principles, let us return to an examination of the assumptions necessary to the conclusion reached by the trial court and the effect of other possible fact situations. Let us first assume some extremes. If the value of the land on each farm (whether in one or more tracts) and the value of the improvements on each farm in the county are in about the same proportion, then obviously there would be no discrimination, at least as far as farm real estate is concerned. Likewise, if substantially all land is improved and the land is proportionately valued and the improvements are proportionately valued, there is no discrimination. Another extreme assumption would be that there are very few improved farms in the county. In that event the methods of valuation here shown to have been used would clearly result in discriminatory taxation of improved property. The mix more likely is somewhere between the extremes. We have no way of determining from the record what the facts are.

Farm real estate, of course, is not a separate class of property for taxation. Real estate located in cities and villages must also be considered and, for that matter, tangible personal property. All these forms of property, except as authorized by the Constitution, are of the same class for valuation and taxation. *Lincoln Tel. & Tel. Co. v. County Board of Equalization, supra.* Since, in this case, urban property improvements are (and this we think is a

notorious fact) usually a much higher percentage of the value of the real estate than in the case of a farm, the method of valuation here would lead to the conclusion that urban real estate is taxed at a proportionately higher valuation than farm real estate. Likewise, if an owner of farmland has improvements on one tract which is separately assessed, and other land unimproved which is separately assessed, no discrimination is necessarily proved by comparing the value of his improved tract with someone else's unimproved land. We do not know, e.g., whether Karel may not have other unimproved land. In that event, his situation is no different from that of Konicek. Or if a farmer lives not on the land (all of which is unimproved) but has his residence in a city or village, no conclusion can be drawn that he has been discriminated against because, in that case, his improvements (assuming only a residence as in Konicek's case) and his land have been proportionately valued with substantially all others.

It is possible, of course, that the district judge, because of his familiarity with Colfax County and its property, may have personal knowledge which justifies the assumptions made. However, that personal knowledge cannot supply evidence which it is the taxpayer's burden to furnish, nor is it something which this court can review. We cannot assume what the facts would be had the matter been further pursued. I would conclude, after hearing the matter de novo, *Lincoln Tel. & Tel. Co. v. County Board of Equalization, supra,* that the taxpayer has failed in his burden of proof, and that the order of the District Court ought to be reversed and the plaintiff's petition dismissed.