SPENCER HOLIDAY HOUSE, INC., A CORPORATION, APPELLANT, V. COUNTY BOARD OF EQUALIZATION OF GAGE COUNTY, NEBRASKA, APPELLEE.

371 N.W.2d 286

Filed August 2, 1985.   No. 84-487.

William E. Peters of Peters & Chunka, for appellant.

Jerry L. Shelton, Deputy Gage County Attorney, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Spencer Holiday House, Inc. (Spencer), appeals the judgment of the district court for Gage County which affirmed the Gage County Board of Equalization's determination of value of Spencer's motel for real estate taxation. We affirm.

Spencer operates a 65-unit motel located on a 3.62-acre tract adjacent to U.S. Highway 77 at the edge of Beatrice. The motel complex consists of three buildings. One building, constructed in 1965, houses a restaurant, lounge, coffeeshop, kitchen,

meeting rooms, registration lobby, and administrative office. A second building, also built in 1965, contains 51 motel units. The third building was built in 1974 and includes 14 motel units. The motel also has a swimming pool which was constructed in 1965.

Hubert Kreuzberg, Gage County assessor responsible for the 1982 valuation, testified and explained his method to determine the motel's value. Kreuzberg valued the unimproved site at $45,615. After inspecting and measuring the motel, Kreuzberg arrived at a value for the motel improvements by using a cost formula based on projected cost of reproducing or replacing the motel improvements. Kreuzberg used a replacement cost manual supplied by the Nebraska Department of Revenue. Using a depreciation factor of 25 percent for improvements constructed in 1965 and 15 percent for those built in 1974, Kreuzberg then applied an economic obsolescence factor of 10 percent for all structures. The resultant value of the motel complex, according to Kreuzberg, was $585,370. Kreuzberg testified that he uniformly utilized the cost formula for all taxable real estate within Gage County and did not consider projected income as a factor affecting valuation.

Using the described cost formula in 1982, Kreuzberg also assessed a 39-unit Super 8 motel at $320,640. The Super 8 motel was located near Spencer's motel but had no direct access to Highway 77. Also, Super 8 did not have a restaurant, lounge, meeting room, or swimming pool. In 1981 Super 8 was sold for $590,000.

Gage County called an expert witness, Wayne Kubert, who testified the Spencer property had an actual value of $660,000 in 1982. Kubert arrived at that value by using methods involving replacement cost, market, and income.

Kubert explained the three approaches he used in arriving at the value of the Spencer motel. Under the cost approach, reproduction cost normally sets the upper limit of value, subject to a deduction for depreciation. Kubert's value for the motel under the replacement cost approach was $760,000 (replacement of $1,224,477 less depreciation of 40 percent). Kubert estimated the value of the motel at $641,885 under the market approach, after considering recent sales of motel properties in comparable communities, including the sale of the

Super 8 in Beatrice. Using the income approach, Kubert arrived at a value of $671,845. The income approach used by Kubert was based on capitalized net income from the property. In describing use of an income approach, Kubert testified that it was necessary to consider the gross income which a property could produce, that is, the earning capacity of a property, and then deduct properly anticipated losses.

Frank Frost, an expert witness, testified for Spencer and expressed an opinion that the motel's actual value was $471,845 under the replacement cost method and $407,000 under the income method. Frost made no determination of value based on a market approach.

Frost used a total replacement cost of $1,216,774 for the motel and a depreciation factor of 65 percent in arriving at his valuation of the motel complex, $425,800, to which the value of the motel site, $45,615, was added, for a total value of $471,845 regarding the motel. Frost testified that the income approach was the most accurate method of determining value of a commercial property. Regarding use of an income method to establish value, Frost considered decreases in net income of the motel over a 3-year period, that is, net income of $140,477 in 1979; $110,364 in 1980; and $71,048 in 1981. Gross income of the motel was $573,004 in 1979; $530,233 in 1980; and $551,295 in 1981.

On the question of equalization Spencer presented witnesses who testified about assessment-sales ratios as indications that the value of classes of property in a county increased or decreased after revaluation by an assessor. There was no evidence that the assessed value for Spencer was excessive or that there was any disproportionate assessment of Spencer's property within its classification as a motel and commercial property.

Spencer assigns two errors: (1) The county assessor's valuation of $585,370 is incorrect; and (2) The motel property was not equalized with other property in Gage County.

The trial of an appeal from a county board of equalization involving the valuation of real estate, both in the district court and the Supreme Court, is de novo as an equitable proceeding. *Gradoville v. Board of Equalization*, 207 Neb. 615, 301 N.W.2d

62 (1981).

In *Richman Gordman v. Board of Equalization*, 215 Neb. 379, 381, 338 N.W.2d 761, 763 (1983), we held:

There is a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action, which presumption remains until there is competent evidence to the contrary. Such presumption disappears when there is competent evidence on appeal to the contrary, and from that point on the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon the evidence, with the burden of showing such valuation to be unreasonable resting upon the appellant on appeal from the action of the board.

See, also, *Hastings Building Co. v. Board of Equalization*, 212 Neb. 847, 326 N.W.2d 670 (1982).

"[T]he burden of persuasion imposed on the complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon his property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment."

*Spencer Holiday House v. County Bd. of Equal.*, 215 Neb. 194, 200, 337 N.W.2d 759, 763 (1983).

To dispose of the issue concerning equalization, we reiterate our holding in *Lincoln Tel. & Tel. Co. v. County Board of Equalization*, 209 Neb. 465, 472, 308 N.W.2d 515, 520 (1981): "In order for a taxpayer to secure a reduction in the assessed value of his property, it must be demonstrated that the assessed value is grossly excessive, or that its value has not been fairly and proportionately equalized." There is no evidence in the record that Spencer's property has been assessed at an excessive value or that the Spencer property has not been fairly and proportionately equalized with respect to other property within the classification assigned to Spencer's real estate. The district court was correct in resolving the equalization question in favor

of the county.

In tax valuation cases actual value is largely a matter of opinion and without a precise yardstick for determination with complete accuracy. See *Rodeo Tel. Membership Corp. v. County of Greeley*, 181 Neb. 492, 149 N.W.2d 357 (1967).

Actual value is determined by using the applicable elements of valuation, including the elements contained in Neb. Rev. Stat. § 77-112 (Reissue 1981), which provides:

> Actual value of property for taxation shall mean and include the value of property for taxation that is ascertained by using the following formula where applicable: (1) Earning capacity of the property; (2) relative location; (3) desirability and functional use; (4) reproduction cost less depreciation; (5) comparison with other properties of known or recognized value; (6) market value in the ordinary course of trade; and (7) existing zoning of the property.

See, also, *Chudomelka v. Board of Equalization*, 187 Neb. 542, 192 N.W.2d 403 (1971).

In *LaGord Assoc. v. County of Cass*, 209 Neb. 99, 101, 306 N.W.2d 578, 579 (1981), we stated: "Nothing in the above statute [§ 77-112] requires the county assessor or county board to use all of the factors set forth therein. Instead, they may use such factors or a combination thereof which they determine to be applicable in determining actual value under the Constitution of Nebraska."

Witnesses before the district court considered several reasonable factors in arriving at their different values for the Spencer property. The differences in value are attributable to differences in opinions. Spencer would have us prefer a net income approach used by its expert in arriving at value and disregard the approaches suggested by the county, including the county assessor's replacement cost-depreciation formula. As we stated in *In re Assessment of OL&B Ry. Co.*, 213 Neb. 71, 75-76, 327 N.W.2d 108, 111 (1982): "[I]t is the earning capacity of the railroad that is of greater importance. Earning capacity and actual earnings are not the same thing. It is what the property, efficiently managed, should have earned that throws light on value."

Upon the record presented to this court, Spencer has failed to meet its burden to show that the board of equalization's determination as to actual value is incorrect or invalid, and, therefore, unreasonable.

AFFIRMED.